Good afternoon, your honors. May it please the court. David Watnick of Perkins Coie on behalf of the petitioner, Junior Cabrera-Rodriguez. I'd like to reserve four minutes for rebuttal. Because Mr. Cabrera-Rodriguez openly expressed his opposition to Cuba's one-party communist regime and refused to vote for a constitutional referendum protecting unopposed communist rule, Cuban police harassed, threatened, interrogated, detained, and twice violently beat him and threatened to jail him forever. Under this court's precedence, physical violence is persecution. It compels a conclusion that the petitioner was persecuted within the meaning of the INA. That Mr. Cabrera-Rodriguez was subject to consistent, related harassment and threats by the Cuban police, in addition to the violent beatings, further underscores his persecution in Cuba. Notwithstanding this court's precedence, the BIA erroneously determined that violent beatings and other harassment Mr. Cabrera-Rodriguez experienced at the hands of Cuban police did not amount to persecution within the meaning of the INA. That decision was wrong and relied on two inapplicable cases. First, he v. Holder, in which this court determined that the petitioner's claims of economic deprivation did not rise to the level of persecution, and Hoekse v. Ashcroft, where the court held that the petitioner was beaten by a baton, detained for 18-19 hours with physical abuse and threatened with big trouble. I'm sorry, Your Honor, what was the name of the case? Schwarma v. Garland. I don't know that that case was briefed, Your Honor. I'd be happy to address it in post-argument briefing. It'd be helpful for the Court. Mr. Wodnik, is it your position that the persecution involves these two violent arrests or something broader than that in the context of, as I understand it, I think he was, the petitioner was being called into the police station 10 times. There were repeated visits to his home. What do you encompass as the persecution involved here? I think that your recitation of the record is correct, and I think it's all persecution. I think the violent arrests themselves are persecution with nothing else, but to the extent more would be required or the Court is looking at the entire record, I think all of it is part of the persecution. Of course, because it happened due to Mr. Cabrera-Rodriguez's political views and was committed by state actors. What case stands for the proposition that violent arrests by itself constitutes persecution? Your Honor, the Court has said in a number of cases, Bringas-Rodriguez v. Sessions, Lee v. Holder, Sean v. Ayanaz, that they've said that violence is persecution, and I think the most analogous case is that would be- It can't be all violence. There's some limit. I don't know what the line is, but it's just not violence in itself. Sure. Well, I think I might frame it slightly differently, which is not all physical force, but perhaps I would submit that the Court's decisions provide that all physical force amounting to violence, and there's a question of what the outer limit of that physical force is, at which point it ceases to be violence. But this Court's decisions in Chand, Gou, Chanchevac, they all include analogous cases where on one, two, or three occasions the petitioner was beaten by body blows, was left bloodied or bruised. In the Gou case, there was related interrogations and detentions that I think were part of the persecution, but the Court recognized that those beatings at the hands of the police were violence. Counsel, let me tell you the problem that I'm having with your case. I understand your argument, and it certainly, I agree with you that one can read this record and come away with the conclusion that this gentleman suffered persecution for purposes of the statute, but that's not, you know, we're not sitting de novo here, right? So we're reviewing this. The question is whether or not the record compels that conclusion, and I'm not sure you get, the record here goes that far, in other words, where we're compelled to reach that conclusion. What here compels that conclusion is my question. I think it's this Court's precedence in the cases that I was mentioning, Chanchevac, Gou, Chan versus INS. In all of those cases, the Court looked at a very similar record. Obviously, every case is a little bit different, but those were instances in which the petitioner was beaten by police or military due to political beliefs, or in the Gou case, it was religious practice, was detained, threatened, harassed, and in each of those cases, precedential decisions of this Court, the Court indicated that that type of record compels a conclusion of persecution. I find the Gou case particularly instructive because there was a single instance of a beating, bruising, medical treatment afterwards, but no sustained injuries, but you also had certain threats here, and it proceeded on an ongoing basis, you know, the check-in on a weekly basis, and here, you know, it seems analogous, at least to me, that someone having to check into the police 10 times or have the police chief visit their home and then be threatened with death or imprisonment for 10 years or longer, along with the beatings, that seems closer to me than some of the other cases that have been cited in the briefing. Yeah, I would agree with Your Honor. I think it is a similar case, perhaps more extreme, I don't want to, you know, compare anyone's plight, but in this case, we do have two beatings, and I think to the extent the Court would also consider the likelihood of future persecution, the fact that there has been a pattern of multiple beatings, I think, suggests strongly that if the petitioner were returned to Cuba, that more could be expected. You know, insofar as there were injuries there, and they were not permanent, the Court has indicated that I think permanent injuries are not required, but injuries and medical treatment, which Mr. Cabrera-Rodriguez experienced and sought in this case, I think are further evidence of the violence that he was subjected to. But Counsel, I know you're not familiar with Sharma, but if you take my word that in that case, we held that being hidden by a baton, being detained for 18 hours with physical abuse and being threatened with big trouble was not persecution, I mean, that seems also similar to this case. What's the difference? I don't know, Your Honor, what the claimed basis for that, those instances were. I mean, if it was on behalf of the political opinion of the petitioner, then it sounds to me like a likely case of persecution, although I'd want to spend more time with it in order to be able to differentiate it. But I think if you get back to what this Court has said persecution is, which is the subjecting an individual to suffering in a way that we regard as offensive, I don't think it is a controversial proposition to say that when an individual, because of their outspoken speech against the government, is beaten and detained by the police, that according to the values that govern asylum in our cases, that is an offensive form of punishment. Sir, is it your argument that any, that one beating suffices? Is that enough to get you over the line? Is that for purposes of the statute? If the, I don't think that the, I want to be careful because I don't think that the level of force is itself dispositive, but there's probably some de minimis amount that would not amount to violence. But insofar as there is a beating that is intended to cause injury and succeeds in causing injury, then I think that yes, within this Court's precedence, which say that violence is persecution, that that would be persecution. Now I don't think that in this case we would have to rely exclusively on that rule because it is part of a pattern of being forced to report to a police chief to check in about my client's being detained, being harassed at home, his family being harassed. The record here is more substantial than simply one beating, but if that was the only instance, I still think it would amount to persecution, yes. Can I switch you to the well-founded fear of future persecution analysis? Is it your view, I take it it's your view, that the Board erred in determining that that was not well-founded because he was allowed to leave voluntarily with a passport? Can you speak to that issue? I can. I think that in and of itself was one problem. I think the Court's precedence in Mimouzian, I believe in the Hoxha case, and a few others have said multiple times that a departure, even with official documents, does not negate an objectively reasonable fear of future persecution for many reasons, one being that some countries may be happy to let dissidents leave, but if they return, they're going to be punished. And I think So what is your best evidence of objective fear of future persecution? I think the best, well, I think there's plenty of good evidence, but if I had to point to one thing of the continuing objective fear of future persecution, it would be evidence in the record indicating that Cuban police have been continuing to go to my petitioner's house where his wife and daughter live, and I believe his mother as well, looking for him, indicating that he'll be arrested if he's found, indicating that his family will be arrested if it turns out that they've been hiding him. They've shown a continuing interest that I think evidences that what they've done to him in the past will continue, if not worse. Was that objective? I mean, wasn't that, was that the testimony of your client? I thought that, and didn't the board find them, or at least the IG found them not credible? That was the testimony of my client. It was supported by letters submitted by his family. The BIA did not make a credibility determination, so I think, Your Honor, the appropriate thing to do, to the extent that credibility is an issue, would be to remand the BIA so that it could resolve credibility in the event the other questions are resolved. I see my time with four minutes remaining is up for rebuttal. Thank you. Good afternoon. May it please the court, Edward Durant for the United States. Can the court hear me okay? Yes. Outstanding. There's several issues in this case. The first is whether or not substantial evidence compels past persecution. And what the government is saying is, it's not, I mean, what happened to Petitioner, assuming he's credible, is distasteful, it's wrong, but it certainly doesn't compel persecution. He indicated in his testimony that he had been threatening him for 10 years. And he's also said he's not afraid to speak his mind. So, you know, take Petitioner on his word. Since roughly 2009, he's been going off against Fidel Castro and good for him. But for 10 years, you know, he hasn't been harmed. Maybe they've threatened, maybe they've said something to him. And then they had him come visit. And then he had two times. How can you say he hasn't been harmed when he's been beaten up a couple of times? I misspoke, Your Honor. I misspoke. He has been harmed twice. And it's been de minimis. This court has similar cases. It would look at the cumulative effect of what happened to him. And, you know, while it's distasteful, it's horrible, it does not compel the conclusion of persecution. And I think if the court looks at the wide range of cases, maybe Petitioner thinks it's persecution. I don't. But the issue is whether or not it's compelled. And it certainly doesn't in this case. Let me follow up with that, Mr. Durant. So he's he's been pulled into the police station ten times. This is all over the course of two months right before he left or made to go there. He's beaten during a detention for 24 hours, has to attend, get medical attention. His wife was getting touched and the police were telling her that they would that she leaves and the police continue to follow and visit his home for several months afterwards. And all this is the credibility is assumed. And all this is based on his political opposition or his views against the Castro regime. Why isn't this just a classic case of political dissidence and persecution? It may be. I mean, respecting the nexus, it could be based on his political opinion, but reaching the level of past persecution, whether arrived, rises to that extreme level. I think we're talking over 10 year period, Your Honor, based on the number of times he had to come in to visit this rogue police chief who was over January and February of it. It's very recent as well. Twenty nineteen, if I believe so. And then you have the country conditions report. So what I'm focused on are the precipitating events that caused him to leave shortly before. You know, he was beaten several a couple of times and then left shortly after. I understand, Your Honor, the beatings occurred right before he left. In fact, those were February 2019. It's my understanding that he and the last thing he said is they've been threatening to kill him for 10 years. So he has been exercising his opinion for over 10 years. And it's my understanding that reading the record that he just wasn't asked to come in 10 times within the last two months. I believe that was over a time period of years. I didn't read it as as as coming right up to the February of January of twenty nineteen. Even so, the harm that he experienced and the mistreatment, while distasteful and the government believes it is distasteful. It does not compel the conclusion that he was persecuted. So that's that's right. Let me follow up with this. Council opposing sites grow versus sessions in their brief. And that's the case where a person was arrested and detained for two days. He was beaten with batons. I think the beatings occurred over one or two minutes and he suffered bruising from it. No sustained injuries. And we in that case found that the evidence compelled the conclusion that there was past persecution. Can you explain what's the distinction from Guo to this case? Well, the distinction is your honor, the petitioner had no lasting harm. The the harm that he did have, all he had was given was bandages and ibuprofen. It's, again, distasteful, but I don't know if it actually the petitioner and Guo didn't have any lasting harm either. He sustained bruising and it was not a permanent G.U.O. Okay. Yeah. It seems to me that the broader context of that case in this one is that we have to look at the entire set of circumstances and not isolate to just threats or just detention or just harassment, but the totality of the circumstances. I would agree with you on that. That's sorry. Go ahead. No, I would agree with you. You have to look at the cumulative what he went through in that time period of in Cuba. And I would say that over the 10 years that he's been speaking his mind and, you know, telling everyone that he's anti Castro when they're saying, oh, you better watch out. And at the end, he goes through two brief detentions and an unfortunate, you know, beating with minimal injury. Again, while distasteful, it doesn't amount to persecution. And why he did say in his in his declaration, his wife was never mentioned in her letter that, again, that the judge didn't give full weight to. But that's that's another inconsistency. So who knows? You know, but we're respecting Mr. Mr. Cabrera. The government's argument is, while horrible and distasteful, the record does not compel the conclusion of past persecution based on everything that happened to him over that time period. Can you address the reasonable fear of future persecution and the BIA's determination that the claim was not well founded based on his leaving the country? Did the did the agency err in in that determination under under our authorities? No, your honor. In the board's decision, it looks it says there's no evidence in the record. And they specifically cite the immigration judge's finding where it indicates that I believe petitioner had a passport and was allowed to leave the country. That case is strikingly similar to the Reyes Sanchez case that I cited in my brief, again, a Cuban national. And this was all this had to do with well founded fear of persecution. He was detained in 2016. He publicly expressed his NA government sentiment. He refused to attend local government meetings. Cuba's aware of it, unlike this case, where it doesn't appear that the Cuban government is aware at all of Mr. Cabrera's past actions. And then 2019, he was allowed to depart. And in petitioner's case, while he was asked a lot of questions, he he's still allowed to depart. There was there's no there's nothing indicating that he's either under arrest or that that I believe the other if I look at it, I get one second. The page 177 and 178 of the record. You may not obtain a passport if you're subject to authorities. So he goes. No problem. And in addition, Mr. Sanchez goes. And this court found no reasonable fear of persecution based on direct, specific and direct evidence. And petitioners offered none. And even in in this case, I believe we had amorphous. Can you explain why being able to leave without harassment is evidence of not being persecuted in the future, not being that how does that work? What's the logic behind that? It's not intuitive to me, I guess. Well, I believe in in Reyes Sanchez, which is another Cuban national and from this court from 2021 is the record indicates it would indicate that if this petitioner, if the Cuban government had any inkling of harming Mr. Cabrera, they wouldn't have left them. They wouldn't let him go. And the fact that he can get out of there and it's so easy and he's got his own official passport is indicative, as it was in this case, that they don't really care about. But do we have to consider the Cuban the Cuban government as one entity? I mean, like in the United States, if like one police department in a state is harassing someone, you know, I and customs is the one that's going to let the person leave. So and that doesn't that's not evidence that there that there's no harassment by any government official. Correct, Your Honor. It's one one police captain. Right. Who doesn't like him. That's the same one that ordered him to report. And then again, we have no arrest record. No, nothing. So it's this guy could be a personal beef. I mean, I guess what I'm not what I'm not following along is if there's no arrest record, but he's being arbitrarily detained. How does that make it any better? You know, if the country conditions report says that there are arbitrary detentions against political dissidents, doesn't that cut against you? I guess I share Judge Bumate's question as to why does it matter if national government officials might not be aware of his political opinions if local government officials are the ones that are persecuting him? And I see your point, but I believe that point was also addressed in Mora as well. It could be more or that I cited and they do cite the court does cite the country conditions evidence and says evidence is now they'll call you back in. They'll they'll harass you, but it's not like the old days where they bludgeon you. Now, with respect to the country conditions, what we have here is a new government. I'm not saying Cuba's a panacea because it's not, but you have a new constitution. You have rights of habeas corpus. It's not like the old days when you go back to the gulag for years and years, they may have displeasure with him. But the question is, is whether under all this evidence, so this is a kinder, gentler Cuban tyranny. It is. I mean, it's still a must. I mean, it's still not a good country, your honor. And, you know, I'm familiar with it. And it's but that does not mean that despite the fact that I have that I don't particularly like the government. What it does mean is that Mr. Cabrera is no longer at risk of future persecution based on this record evidence and based on everything that's happened to him. Well, maybe maybe the reason they wanted to let him go is because he's a troublemaker. But that's that's distinct or it's not the same question as to whether or not what they'll do to him when he when he goes back. So because you are going to send him back. And the question is, what does he have a reasonable fear of what's going to happen when he returns? But like my colleagues, I'm not sure I see the relevance of their willingness to let him go, having any bearing on that question of his fear of future persecution. I rely on that sort of based on on Reyes Sanchez, that Ninth Circuit case that I cited. And it really goes to if they if they had a problem with him, if there was anyone that had a problem with at a sustained level, they wouldn't let him go. And right now, the only issue he's had is with this. I call him a rogue police commander. And when you look at all in that case is strikingly similar to this one, especially on well-founded fear. So you're so you're saying your best argument is that because he was allowed to leave without problems, that's evidence that supports that it was only an isolated rogue cop that's been harassing him. Well, that's one of my records as the board did. He's he's you know, he has an official passport. He's let go. He was never persecuted in the past. He was mistreated and based on the other country. Can you address the the wife's testimony that your opposing counsel said was the best evidence of of objective future persecution? Well, that was a letter submitted by the wife and it was given minimal evidence by the by the military, excuse me, not military immigration judge. And in that case, she has indicated that they've come by looking for him. But I don't know why they'd be coming by looking for him. While he went and got left the country through official purposes. I mean, it would make sense that they know he'd left the country based on the fact that he went through it. He didn't he didn't like, you know, slide out in a boat in the middle of the night. He went through official channels at the airport. Well, doesn't that illustrate doesn't that then illustrate that the right hand doesn't know what the left hand is doing? You have maybe immigration officials that let them leave, but the local officials, police chief included, are still searching for him. You know, that could be on the speculative. I'm only going off what I've seen in the record. And based on the entire record, from the fact that it's, you know, most of the people leaving now it's economic from that we've had some reforms where you just can't throw away the on someone. There's there's habeas rights to the fact that you can't leave that country. If, in fact, you know, you're they consider you a threat. All this evidence and the fact. But the specific record evidence here is the wife's letter saying that their police are showing up at their house individual. That's individualized evidence that the police that there's official attention being paid on his family, on his home, as opposed to the sort of nebulous things that I was hearing you say just now. Yes, your honor. And the immigration judge gave it the weight that it deserved based on the fact that it came in on the last day. But also, if you look at Reyes Sanchez, it looks like that particular. What does that mean? He gave it the weight it was deserved. Does that mean that he gave it no weight or what are we to do with that? I think he you can read the immigration judge saying it was minimal weight. It was. But it's indicative. I mean, they're showing up again. They're showing up at his house. They've been showing I mean, they've been they've had they've known about him for over 10 years. He's been stating his opinion. He's never been persecuted. He was allowed to leave the country. And there are indications that even though it wasn't the minimal, wasn't the middleweight finding based on the fact that there were not original documents for for some of these things. Yes, your honor, I apologize. I misstate. So if there's a little bit of a concern that I have with with how truncated the hearing was, as I understand from reading the transcript, the immigration judge wanted to rush it along and ask the government to ask leading questions because he had a he or she had another case in the afternoon. Given that the board in this case assumed the credibility of the petitioner, shouldn't we also assume the credibility of of the wife's letter for purposes of our review right now that that it is indeed true that the police were visiting? Excuse me. Your honor, you can give it the way the way you deserve. But you know, the police have been coming to his house for years. And this is nothing new. He has been speaking his mind for years. He's not afraid to speak. That was the first thing he said. And again, so distasteful. But there's if it's a question of whether or not a contrary result is compelled. And we're looking at the entire record here. It's not you know, we could disagree. But again, it's not a compelled. It's not compelled. And that's what the government is. Is that's our that's our argument, sir. You address him over time. I do apologize for that. It's OK. We have some more questions. Go ahead. Can you address the Convention Against Torture claim, please? Oh, yes, sir. Well, given the record evidence, the immigration judge looked at this, you know, at the regulation. There's certain things you look at whether or not someone's going to be tortured or not. There's no evidence of past torture. And he might have been mistreated, but again, not persecution, certainly not torture. The country conditions evidence does not indicate that it's a likelihood of torture. And finally, he there he can relocate based on the he's a young man. He doesn't have an arrest record. He can hold on his job. This is someone who is compelled to go somewhere else. So given the record evidence, the I know the IJ relied upon the relocation issue. But are you sure you want to rely on the BIA? Didn't mention that. But it seems to me that that's wading into a legal problem that that creates problems for you. Well, they did mention that they did they did cite a they did cite a board decision and that it was speculative. His harm is speculative. And that's something that the judge said as well. And I'm sorry, sir, but I'm not sure the relocation issue has anything to do with again with the with his ability to relocate is relevant to the to the to the cat claim. Based on the board's decision, based on the record evidence, his fear of torture was speculative based on everything on the entire record. And when you look at the fact that he hasn't been tortured, the other country conditions I've mentioned, the fact that he doesn't have an arrest record, he doesn't he doesn't have to be tortured in order to maintain a claim under cat, does he? No, Your Honor, but it's one factor to consider. Right. And as I look at the BIA's decision, I don't see any discussion that it had about the country conditions report. How do we know that the board independently looked at evidence related to torture itself with the absence of any discussion about about the country conditions? Well, as this court has said, it doesn't have to write in exegesis about everything. And it indicated in on the on page two of the record that the record does not contain credible evidence of future persecution. So it's based on this court's precedent and the fact that the immigration judge considered all the evidence in the record. It is assumed that the board did consider it need not mention it in particular. OK, thank you very much, counsel. Thank you so much. Thank you, Your Honors. A few points, although I'm happy to answer any questions. First, I do not believe the record reflects that the petitioner testified to 10 years of dissidence. It's a long record and I may be forgetting something, but I think it's simply that there were 10 instances of detention. So my recollection is that there was not some some long pattern where he was peacefully allowed to dissent. With regards to changed country conditions, the BIA didn't rely on changed country's decisions. I think this court's review is cabin to the grounds on which the BIA actually relied. In any event, I think what Mr. Durant is describing are perhaps changed country perceptions, but I don't see any evidence in the record indicating that the rule of law in Cuba is strong enough that a new law ostensibly enshrining a right habeas corpus has actually ever been enforced to the benefit of somebody like my client. And I haven't seen anything in the country conditions or elsewhere in the record indicating that any Cuban can openly voice their dissent against the communist regime without reprisals, which is really the issue that's relevant to this case. You mentioned a few cases, Reyes-Sanchez. In the Reyes-Sanchez case, the petitioner didn't present any evidence of prior persecution in Cuba. The petitioner had been arrested for an illegal departure attempt in 2016 at a time when I understand Cuba did more forcefully limit who could depart the country. Can you address Mora, which I do believe that in that case we did say that the fact that he was allowed to leave the country was evidence that he would not have future persecution? I think the dispositive question in Mora, the dispositive issue, I should say, is that the petitioner there never claimed to be a political dissident at all. They had indicated that they had once been, I think, kicked by a Cuban police officer, soldier, other authority figure, but wasn't actually claiming a protected basis for asylum. It's also- Well, I think the fact that he was allowed to leave the country was put into the bucket of whether or not there's objective evidence of future fear of persecution. I don't think that it relates to what type of claim he is. It's just a question of what's evidence to support future fear. Sure. For whatever it's worth, it's not a published precedential decision of this court, but even if you think that there is some relevance to be given to the ability to depart, I think the record is very strong here that in this case, if Mr. Cabrera-Rodriguez returns, the police are looking for him and they intend to resume the persecution that happened before, perhaps increase it. They've said they would jail him forever. As I look at my notes, I think our cases, Mimouzian and Hoksha, both discuss that voluntary departure does not undermine a claim of well-founded fear of future persecution, and those are both published. I don't know. Does that line up with your understanding? That is absolutely correct, Your Honor, and those are both published decisions. So, to the extent that more would appear to conflict with them and they can't be reconciled, obviously those are the precedential authorities here. I know that we've covered a lot of ground, but I would just remind the Court that on all these issues of credibility, the BIA did not reach these issues. The Court's review is cabin to the grounds the BIA decided. It's a big record and it can all be reviewed upon remand. Can you answer? I'd like to address the same question I asked your friend, which is the yes. So, there's certainly, from what I see, there's just absolutely no evidence of torture here of any kind. There's no, I mean, he's been beaten up. You have a claim as to persecution and fear, and he, I understand your arguments there, but as to the cat claim, I'm just, I just see nothing here to support that. A few quick responses, Your Honor. One, I don't think there needs to be past evidence of torture for there to be a likelihood of future torture. Two, I think that the police have indicated that they intend to up the ante by perhaps jailing Mr. Cabrera-Rodriguez forever if he does go back. But I think the Court doesn't necessarily need to reach those issues because the immigration judge decided the cat claim, in my reading, exclusively on the question of internal relocation and misplaced the burden in doing so. And when the BIA reached the cat claim, it simply said, well, we agree with the immigration judge. And when that happens... But they didn't do, but they didn't cite that they, there was a somewhat extended discussion on the cat claim and the BIA didn't reference the relocation issue on the cat claim, as opposed to the well-founded fear of future persecution. My reading of the BIA's handling of the cat claim, to be frank, is that it didn't really perform substantive analysis at all and expressed its agreement with the immigration judge. And when that happens, then the review is still of the BIA, but it looks to the immigration judge's opinion to say, okay, well, what is the BIA intending to express that it agreed with? And I think the only way to read those two decisions together is the BIA itself was saying, we think there's no cat claim because the petitioner has not sustained the burden of the fact that he can't internally relocate. And that is just compounding the error that the immigration judge would have made. Thank you very much, counsel. And I believe you took this case for bono. Thank you for doing that. Well argued on both sides. We are adjourned for today. And this case is submitted. Okay. This honorable court now stands in recess.
judges: BUMATAY, SANCHEZ, Baker